IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

CHRISTIAN BICKHAM, # 28704-034
                                                                              PETITIONER

V.                                                        CIVIL ACTION NO. 5:09cv75-DCB-MTP

BRUCE PEARSON, Warden                                                          RESPONDENT

REPORT AND RECOMMENDATION

BEFORE THE COURT is the *pro se* Petition of Christian Bickham for a Writ of Habeas Corpus [1] (the "Petition"), filed under 28 U.S.C. § 2241. Having considered the Petition [1] the Memorandum [2] in Support of Petition; the Answer [8], the Reply [9], the Supplemental Reply [10] and all matters made a part of the record in this case, as well as applicable law, the undersigned is of the opinion that the Petition should be dismissed with prejudice.

Background

Petitioner Christian Bickham pled guilty to conspiracy to possess cocaine and cocaine base with intent to distribute in violation of 21 U.S.C. § 846 in the United States District Court for the Eastern District of Louisiana. Pet. [1] at 3. On March 16, 2005, he was sentenced to serve 144 months in the custody of the federal Bureau of Prisons ("BOP") followed by a period of supervised release. *Id.* Petitioner is incarcerated at the Federal Correctional Complex in Yazoo City, Mississippi ("FCC Yazoo City"), and his projected release date is May 27, 2014.[1]

In his Petition, Bickham challenges an Incident Report dated September 29, 2008, and an Amended Incident Report dated October 1, 2008, charging him with "Escape From Unescorted Community Program, Activity, Open Institution or From Outside Secure Institution Without

---

[1] www.bop.gov/iloc2/InmateFinderServlet?Transaction=IDSearch&needingMoreList=false&IDType=IRN&IDNumber=28704-034

Violence" in violation of Code 200[2], and related disciplinary proceedings subsequent to which he was found guilty of the alleged offense. Memo. [2] at 1-2; Memo. [2], Ex. 1 at 1. Specifically, as set forth in the Incident Report and in the supporting memoranda, on September 28, 2008, at about 8:00 p.m, an "unannounced count" was conducted at FCC Yazoo City (Magnolia Camp), where Petitioner was housed. Memo. [2] at 3; Memo. [2], Ex. 1 at 1. During the count, Lieutenant G. Rodgers ("Lt. Rogers") went behind the camp building to observe the walking track, hand ball court, exercise area, warehouse area, and grounds. Memo. [2] at 3. At 8:08 p.m. a "bad count" was called, meaning that there were inmates missing. Memo. [2] at 3; Memo. [2], Ex. 1 at 1. At approximately 8:10 p.m., Lt. Rodgers observed a group of six inmates, followed by seven more inmates, walking from the trailer park area, behind institution grounds, towards a door at the back of the camp building facing the exercise area. *Id.*

The inmates were intercepted by Lt. Rodgers when they attempted to enter the unit through the door facing the exercise area. Memo. [2] at 3-4. The lieutenant escorted the group to the cabana behind the unit. *Id.* Lt. Rodgers then obtained the "bed book"[3] from the camp officer in order to positively identify the thirteen inmates being detained in the cabana. Memo. [2] at 4. After reviewing the bed book, Petitioner was identified as one of the inmates. Answer [8], Ex. 2A. Once they had been identified, the inmates, including Bickham, were pat searched, given an alcohol sensor test and escorted to the Special Housing Unit. *Id.*

Petitioner received the Incident Report on September 29, 2008 and received the Amended

---

[2]The parties do not provide a precise citation to the code section at issue, simply referring to the infraction as a "Code 200" offense. Other cases refer to the offense at issue in the same way. *See*, e.g., *Brown v. Patton*, No. 06-cv-36, 2006 WL 1007470, at *3-4 (E.D.Ky. April 17, 2006).

[3] This book contains photographs of the inmates assigned to a living unit. *See* Answer [8] at 3 n.2.

2

Incident Report on October 1, 2008. Memo. [2] at 1. He was advised of his right to remain silent, and indicated that he understood. Answer [8], Ex. 2 at 2. Petitioner then made the following statement to the investigator: "I was walking on the track when they called count, then the Lieutenant called us over to the Breathalyzer, check the camera." Answer [8], Ex. 2 at 2. The investigator found that the Incident Report should be referred to the Unit Disciplinary Committee ("UDC") for further disposition. *Id.*

The UDC held a preliminary hearing on October 2, 2008. Answer [8], Ex. 2 at 3. Prior to the hearing, Bickham was advised of his rights. *Id.* He stated that at the time in question he had not been off institution grounds, but was on the right side of the pool tables. *Id.* The UDC referred the charge to the Discipline Hearing Officer ("DHO") for further action. *Id.* Petitioner was provided a notice of rights pertaining to his DHO hearing, and he acknowledged receipt in writing on October 2, 2008. Answer [8], Ex. 3. Bickham indicated that he did not wish to have either a staff representative at the hearing, but asked that Keith Williams and Dwight Guyot testify on his behalf. Answer [8], Ex. 4.

The DHO hearing was held on October 9, 2008. Answer [8], Ex. 5 at 1. Petitioner said that he understood his rights and wished to proceed. In support of his position, Bickham stated: "He is lying. I never left the institutional grounds. I was on the right side of the track near the pool tables." *Id.* After reviewing the evidence in detail, the DHO found that Bickham had committed the offense as charged, and recommended: (1) a disciplinary transfer; (2) disallowance of 27 days Good Conduct Time ("GCT"); (3) 30 days of disciplinary segregation; and (4) loss of telephone, commissary and visiting privileges for one year. Answer [8], Ex. 5 at 2-3. The DHO thoroughly explained the reasons for these sanctions.[4] Answer [8], Ex. 5 at 3-4.

---

[4] "You were sanctioned with Disciplinary Segregation and Loss of Good Conduct Time as punishment.

In the instant Petition, Petitioner alleges that: (1) the decision by the DHO was arbitrary and capricious because it was based on erroneous evidence;[5] (2) the DHO failed to consider conflicting evidence; and (3) the written findings and evidence do not support the DHO's ruling. Memo. [2] at 3-8. Bickham requests that the Incident Report be expunged and the 27 days of GCT be restored; or, that the case be remanded to the DHO for a new hearing. Pet. [1] at 5; Memo. [2] at 8; Reply [9] at 5.

---

Your Disciplinary Transfer was recommended because the DHO believes that you are in need of greater supervision than can be afforded at this level Security Institution.

The sanctions of Commissary, Phone, and Visiting Restriction were imposed because the severity of the offense merits imposition of a sanction which will impress upon you, that your unwillingness to abide by rules and regulations will result in punishment, which will deprive you of a pleasurable privilege.

The action on the part of any inmate to escape from an open institution creates an inability of the Bureau of Prisons and assigned staff to maintain proper inmate accountability at all times. Inmates on escape status demonstrate an inability to handle the responsibility required of them for assignment to a camp, half-way house, furlough, and/or furlough transfer.

The sanctions imposed by the DHO are to let you know that you, and you alone, are responsible for your actions." Answer [8], Ex. 5 at 3-4.

[5] This claim is based upon the fact that the October 1, 2008 Incident Report was a "re-write of the incident report to clarify the charge of Escape." *See* Answer [2], Ex. 2. In the initial report charging Petitioner with Escape, Lt. Rodgers described the incident as follows: "On September 28, 2008 at approximately 8:00 p.m., an unannounced count was conducted at the Magnolia Camp . . . At 8:10 p.m., I observed inmate Bickham, Christian #28704-034 walk out of the woods near the institutional warehouse across institutional grounds up to the camp walking track." *See* Answer [2], Ex. 2B. In the revised report, Lt. Rodgers stated: "On September 28, 2008 at approximately 8:00 p.m., an unannounced count was conducted at the Camp. At 8:08 p.m., a bad count was called into the Control Center. At 8:10 p.m., I observed inmate Bickham, Christian, Reg. No. 29704-034, walking from the Trailer Park area, which is off institution grounds, through the woods, behind the warehouse and garage, attempting to re-enter institution grounds by walking toward the walking track. Inmate Bickham was ordered to come to me, to which he complied. After a re-count, inmate Bickham was escorted to the Special Housing Unit." Answer [2], Ex. 2.

Analysis

Whether Petitioner was Afforded Due Process

In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court held that disallowance of GCT, which will result in an inmate's confinement being extended, requires due process.[6] However, the Court explained that due process in the context of prison discipline is not the same as due process in the criminal law context because "[p]rison discipline proceedings are not a part of a criminal prosecution, and the full panoply of rights due a criminal defendant does not apply." *Wolff*, 418 U.S. at 556. Thus, the Court held that due process is satisfied in prison disciplinary hearings when the inmate receives a finding from an impartial decision maker, and also receives: (1) at least 24 hours advance written notice of the charges; (2) an opportunity to present documentary evidence and testimony from witnesses; (3) help from other inmates or staff, if needed (*e.g.*, if the inmate is illiterate or the charges are complex); and (4) a written statement of the evidence relied on and the reason for the disciplinary action. *Id.* at 564-70.

Petitioner was provided a copy of the Incident Report more than 24 hours before the

---

[6] However, with respect to the other sanctions imposed on Petitioner (disciplinary segregation and loss of commissary, visitation and telephone privileges) no process was due. "[T]he Due Process Clause does not protect every change in the conditions of confinement which has a substantial adverse effect upon a prisoner." *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir. 1997) (citing *Sandin v. Conner*, 115 S.Ct. 2293, 2297 (1995)). Rather, the liberty interests which are protected by the Due Process Clause "are generally limited to state created regulations or statutes which affect the quantity of time rather than the quality of time served by a prisoner." *Id.* (citing *Sandin*, 115 S.Ct. at 2297). Accordingly, restrictions or loss of an inmate's visitation privileges "provide no basis for a claim of the denial of constitutional rights." *Palmisano v. BOP*, 258 Fed. Appx. 646, at * 2 (5th Cir. Dec. 11, 2007) (citations omitted); *see also Lewis v. Dretke*, 54 Fed. Appx. 795, at * 1 (5th Cir. Dec. 11, 2002) (prisoner's claim challenging restriction of commissary privileges and loss of telephone privileges resulting from allegedly false discipline charges did not implicate due process); *Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999) (no constitutional right to visitation privileges); *Pichardo v. Kinker*, 73 F.3d 612, 613 (5th Cir. 1996) ("administrative segregation, without more, simply does not constitute a deprivation of a constitutionally cognizable liberty interest." (quoting *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995) (rejecting claim that confinement in administrative segregation violated a prisoner's due process rights).

disciplinary hearing and does not argue otherwise. [7] Memo. [2] at 1. Next, Bickham gave a statement in his defense, which he concedes. *See* Memo. [2] at 3; Answer [8], Ex. 5. Petitioner was also advised of his right to present evidence and testimony from witnesses, as well as the right to request help from a staff representative. *See* Answer [8], Ex. 2 and 3. Finally, the Incident Report contains a written statement of the evidence relied on and the reasons for the disciplinary action. *See* Answer [8], Ex. 5. Thus, the due process requirements as constitutionally required by *Wolff* have been satisfied.

<u>Whether the Written Findings of the DHO are Supported by the Evidence</u>

Petitioner Bickham states that the DHO's written findings do not support his ruling, and that "there is no evidence to support the ruling of the DHO that petitioner committed the prohibited act of escape from an open institution." Memo. [2] at 7. In order for a prison disciplinary decision to pass constitutional muster, there merely must be "some evidence" to show that the inmate committed the offense in question. *Superintendent, Massachusetts Correctional Institution v. Hill*, 472 U.S. 445, 455 (1985). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56. Indeed, even if the evidence is "meager," as long as there is "some evidence" to support the findings of the disciplinary board, its decision must be upheld. *Id.* at 456.

"Determining the believability of the testimonies presented at the hearing is left to the

---

[7] The court notes that Petitioner clearly was aware of the nature of the charges against him on September 29, 2008, when he received a copy of the initial Incident Report. *See* Answer [8], Ex. 2B. Thus, "because the factual basis of the investigation report gave the petitioner all the information he needed to defend against the charge, the . . . modification did not deprive the petitioner of his due process rights." *Storey v. Reese*, No. 1:04cv234, 2007 WL 2709896, at * 3 (E.D. Tex. Sept. 13, 2007) (citing *Northern v. Hanks*, 326 F.3d 909, 911 (7th Cir. 2003)).

6

discretion of the hearing officer." *Hudson v. Johnson*, 242 F.3d 534, 537 (5th Cir. 2001). In making his decision, the DHO relied on the fact that a bad count was conducted at 8:08 p.m. on the night in question, and that Lt. Rodgers observed Petitioner walking from an area off institution grounds towards the camp building at 8:10 that night, as set forth in the Incident Report as well as in the supporting memoranda provided by Lt. Rodgers and Senior Officer George L. Hale.[8] Answer [8], Ex.5 at 2-3. The DHO considered Petitioner's statement denying that he had left institution grounds and his contention that Lt. Rodgers was lying, but found no reason for Lt. Rodgers to falsify his testimony (in contrast to Petitioner, who, the DHO noted, had a reason to lie). *Id.*

In this case, there was clearly "some evidence" to support the DHO's finding. *See Hill*, 472 U.S. at 456 (prison guard's testimony and copies of his written report supported conclusion that the evidence before the disciplinary board was sufficient to meet the requirements imposed by the Due Process Clause); *Hudson*, 242 F.3d at 536-37 (holding that the information provided in a written incident report can, standing alone, satisfy the "some evidence" standard). Accordingly, the court finds that Petitioner's argument on this issue is without merit.

Whether the Amended Incident Report Constitutes an Arbitrary and Capricious Act

Bickham maintains that Lt. Rodgers' Amended Incident Report, which contains supplemental language about a "bad count," is evidence that the lieutenant lied, thus rendering the report arbitrary and capricious. Memo. [2] at 4. The Petitioner also alleges that in the second report, the lieutenant arbitrarily added information indicating that the inmates were seen returning from off the facility grounds. Reply [9] at 2. Lt. Rodgers filed his original Incident Report, as

---

[8]On the night in question, Officer Hale announced count time. Answer [8], Ex. 2A. Upon starting the count, he noticed some inmates were missing. *Id.* Hale saw inmates walking towards the building and went outside where he was met by Lieutenant Rodgers who told him the 13 inmates were coming from the woods. *Id.*

7

well as a more thorough memorandum, on September 28, 2008, the date of the underlying incident. *See* Answer [8], Ex. 2A and 2B. The court finds that Lt. Rodgers' Amended Incident Report was plainly based on the memorandum Rodgers prepared for Captain Castelli on the same date as the first incident report and no additional facts were included. *See* Answer [8] Ex. 2 and 2A. The lieutenant simply added statements of clarification. *Id.*

Petitioner also argues that in re-writing the Incident Report, Lt. Rodgers arbitrarily changed the facts regarding where he observed Bickham to justify a code 200 escape charge. *See* Response [9] at 2-3. A comparison of the initial and final incident reports shows that Lt. Rodgers was merely clarifying that he observed Petitioner walking from the trailer park area, which is off institution grounds, through the woods - since the initial report simply stated that Lt. Rodgers observed Petitioner "walk out of the woods" without specifying that he was, in fact, off institution grounds. *See* Answer [8], Ex. 2 and 2B.

At the hearing, the DHO considered Petitioner's contention that Lt. Rodgers was lying, finding that, in contrast to Petitioner, there was "no reason for the reporting Lieutenant to falsify his statement about this incident."[9] *See* Answer [8], Ex. 5. As noted *supra*, it is not up to this court to re-visit the DHO's credibility determinations or his weighing of the evidence. *See Hudson*, 242 F.3d at 537; *see also Hill*, 472 U.S. at 455-46 (in reviewing DHO's findings, court does not conduct "independent assessment of the credibility of witnesses or weighing of the evidence.").

Moreover, Petitioner has presented no evidence to support his allegation that Lt. Rodgers

---

[9] Indeed, "while petitioner states his [disciplinary] conviction was the result of false testimony from the charging officer, the fact that the conviction was based on testimony from the charging officer demonstrates there was some evidence to support the conviction." *Porter v. Director*, No. 5:08cv106, 2008 WL 4542880, at * 3 n.1 (E.D. Tex. Oct. 7, 2008) (citing *Hill*, 472 U.S. 445).

8

falsified the Incident Report. *See Chopp v. Dretke*, No. C-04-686, 2005 WL 2275953, at * 5 (S.D. Tex. Sept. 19, 2005) (rejecting unsupported claim that reporting sergeant falsified his disciplinary report) (citing *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) ("Although pro se habeas petitions must be construed liberally, mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue.")). Thus, the court finds that this argument is without merit.

Whether the DHO Erred by not Addressing Conflicting Evidence

Petitioner argues, pursuant to 28 C.F.R. § 541.17(f),[10] that the DHO's decision should have been based upon the "greater weight of the evidence" rather than "some evidence," because there was conflicting evidence presented at the hearing. Memo. [2] at 5-6. Petitioner's reliance on this regulation is misplaced. BOP regulations do not set the standard by which this court reviews BOP disciplinary actions; rather, the requirements of due process govern. As noted *supra*, a decision to revoke good-time credits following a prison disciplinary hearing comports with due process when there is "some evidence" in the record to support the DHO's findings. *See Hill*, 472 U.S. at 454-55; *see also Reeves v. Pettcox*, 19 F.3d 1060, 1062 (5th Cir. 1994) ("[P]rison disciplinary proceedings will be overturned only where there is *no evidence whatsoever* to support the decision of the prison officials.") (emphasis added).

The Petitioner alleges that the original Incident Report and Officer Hale's report are at odds. Memo. [2] at 5. He also emphasizes the difference between the initial and Amended Incident Reports as submitted by Lt. Rodgers, discussed *supra*. *See* Memo. [2] at 6.

The DHO specifically indicated that he considered the written reports of Lt. Rodgers and

---

[10] "The DHO shall consider all evidence presented at the hearing. The decision of the DHO shall be based on at least some facts, and if there is conflicting evidence, it must be based on the greater weight of the evidence."

9

Officer Hale. Answer [8], Ex. 2A and Ex. 5 at 2. Bickham points to an alleged conflict between the statement of the Lt. Rodgers that an unannounced count was conducted at 8:00 p.m., and the supporting memorandum from Officer Hale stating that he announced "count time" over the public address loudspeaker. Memo. [2] at 3-5. Petitioner also points out that Lt. Rodgers stated that a bad count was called into the Control Center, but Officer Hale never stated that a bad count was called into the Control Center (but, rather, he indicated that the count was never completed). Memo. [2] at 4. However, the Court finds that it makes no difference whether the unannounced count was announced via loudspeaker or whether the bad count was called in to the Control Center, the fact remains that there is some evidence that Bickham was off institution property in violation of the rules. *See Brown*, No. 06-cv-36, 2006 WL 1007470, at *3-4 (holding that when an inmate cannot be found on jail premises during a count, he may be charged with a Code 200 escape offense).

Additionally, the DHO evaluated the credibility of Lt. Rodgers' statement versus the Petitioner's allegations. Answer [8], Ex. 5 at 2-3. Although Lt. Rodgers and Bickham had different versions of the facts, the DHO found Lt. Rodgers' testimony and statement to be more credible. *Id.* Further, the DHO specifically pointed out that Bickham's witnesses were unable to support his contention that he was not off institution grounds at the time of the count. *Id.* The court finds that the DHO did consider the conflicting evidence and there exists, at a minimum, some evidence in support of the DHO's decision.

## Recommendation

For the reasons stated above, it is the recommendation of this court that Christian Bickham's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 be dismissed with prejudice.

10

<u>Notice of Right to Object</u>

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party. The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS, the 13th of July, 2010.

s/Michael T. Parker<br>United States Magistrate Judge